ACCEPTED
03-13-00852-CR
4852722
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/10/2015 5:23:27 PM
JEFFREY D. KYLE
CLERK

## CAUSE NO. 03-13-00852-CR

## IN THE COURT OF APPEALS FOR THE THIRD JUDICIAL DISTRICT OF TEXAS AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/16/2015 10:45:00 AM
JEFFREY D. KYLE
Clerk

_____

## GREGORY LOPEZ,
**Appellant**

## VS.

## THE STATE OF TEXAS,
**Appellee**

_____

## FROM CAUSE NUMBER CR2012-396 IN THE 207TH JUDICIAL DISTRICT COURT OF COMAL COUNTY, TEXAS HONORABLE GARY L. STEEL, JUDGE PRESIDING

_____

## APPELLEE'S (STATE'S) BRIEF

_____

### ATTORNEY FOR THE STATE:

**SAMMY M. McCRARY
CHIEF FELONY PROSECUTOR
COMAL COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE
150 N. SEGUIN AVENUE, SUITE 307
NEW BRAUNFELS, TEXAS 78130
mccras@co.comal.tx.us (email)
(830) 221-1300 (office)
(830) 608-2008 (fax)
SBN: 90001990**

_____

## ORAL ARGUMENT IS REQUESTED

CAUSE NO. 03-13-00852-CR

IN THE COURT OF APPEALS FOR THE
THIRD JUDICIAL DISTRICT OF TEXAS
AT AUSTIN, TEXAS

───────────────────────────────────────────

GREGORY LOPEZ,
Appellant

VS.

THE STATE OF TEXAS,
Appellee

───────────────────────────────────────────

FROM CAUSE NUMBER CR2012-396
IN THE 207TH JUDICIAL DISTRICT COURT OF
COMAL COUNTY, TEXAS
HONORABLE GARY L. STEEL, JUDGE PRESIDING

───────────────────────────────────────────

## APPELLEE'S (STATE'S) BRIEF

───────────────────────────────────────────

To the Court of Appeals:

Comes now the State of Texas, hereinafter referred to as the State, in response to Appellant's brief and requests this Court to overrule Appellant's two points of error and affirm the judgment of the trial court below. In support thereof, the State would show the Court the following:

## IDENTITY OF PARTIES AND COUNSEL

**APPELLANT – Gregory Lopez**

**APPELLEE – The State of Texas**


**ATTORNEY FOR APPELLANT
AT TRIAL AND ON APPEAL**

David K. Sergi
David K. Sergi & Associates, P.C.
P.O. Box 887
San Marcos, TX 78666


**ATTORNEY FOR THE APPELLEE (STATE)
AT TRIAL AND ON APPEAL**

Sammy M. McCrary
Chief Felony Prosecutor
Comal County Criminal District Attorney's Office
150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130

# TABLE OF CONTENTS

|  | Page |
|---|---|
| **IDENTITY OF PARTIES AND COUNSEL** | i |
| **TABLE OF CONTENTS** | ii |
| **INDEX OF AUTHORITIES** | iii-v |
| **STATEMENT OF THE CASE** | 1-2 |
| **ISSUES PRESENTED** | 2 |
| **STATEMENT OF FACTS** | 3-19 |
| **STATE'S RESPONSE TO APPELLANT'S FIRST POINT OF ERROR** | 19-33 |
| Summary of the Argument | 19-20 |
| Authorities | 20-26 |
| Arguments | 27-33 |
| **STATE'S RESPONSE TO APPELLANT'S SECOND POINT OF ERROR** | 33-44 |
| Summary of the Argument | 33-34 |
| Authorities | 34-37 |
| Arguments | 37-44 |
| **PRAYER FOR RELIEF** | 44 |
| **CERTIFICATE OF SERVICE** | 45 |
| **CERTIFICATE OF COMPLIANCE** | 46 |

# INDEX OF AUTHORITIES

**CASE**                                                                                       **PAGE**

*Archie v. State*, 340 S.W.3d 734 (Tex.Crim.App. 2011)………………32, 34, 36

*Bouchillon v. State*, 540 S.W.2d 319 (Tex.Crim.App. 1976)………….22, 28-29

*Bullard v. State*, 706 S.W.2d 329 (Tex.App.—
Houston [14th Dist.] 1986)…………………………………………….. 25, 28, 29

*Busby v. State,* 253 S.W.3d 661 (Tex.Crim.App. 2008)……………….21

*Bustamante v. State,* 48 S.W.3d 761 (Tex.Crim.App. 2001)…………...20, 21

*Chimney v. State,* 6 S.W.3d 681 (Tex.App.—Waco 1999, *pet. ref'd*)….32

*Clark v. State*, 558 S.W.2d 887 (Tex.Crim.App. 1977)………………..41

*Cockrell v. State,* 933 S.W.2d 73 (Tex.Crim.App. 1996)………………31

*Cruz v. State,* 225 S.W.3d 546 (Tex.Crim.App. 2007)…………………20, 31

*Davis v. State*, 645 S.W.2d 817 (Tex.Crim.App. 1983)……………… 37, 40

*Dinkins v. State,* 894 S.W.2d 330 (Tex.Crim.App. 1995)……………...37

*Espinoza v. State*, 843 S.W.2d 729 (Tex.App.—
Austin 1992, *pet. ref'd*)…………………………………………...37, 40

*Ex parte Lane,* 303 S.W.3d 702 (Tex.Crim.App. 2009)………………..20

*Freeman v. State,* 340 S.W.3d 717 (Tex.Crim.App. 2011)…………… 20

*Fuentes v. State*, 991 S.W.2d 267 (Tex. Crim. App. 1999)…………….22-23, 28, 29

*Garcia v. State*; 513 S.W.2d 559 (Tex.Crim.App. 1974)……………... 29

*Garcia v. State*, 126 S.W.3d 921 (Tex.Crim.App. 2004)………………31

*Griffin v. California,* 380 U.S. 609 (1965)……………………………… 21

*Guilder v. State*, 794 S.W.2d 765 (Tex.App.—Dallas 1990)…………. 32

*Harris v. State*, 684 S.W.2d 687 (Tex.Crim.App. 1984)……………… 31

*Hawkins v. State*, 135 S.W.3d 72 (Tex.Crim.App. 2004)…………… 35, 36

*Jimenez v. State,* 240 S.W.3d 384 (Tex.App.—
Austin 2007, *pet. ref'd*)……………………………………………….. 20

*Jimenez v. State*, 953 S.W.2d 293 (Tex.App.—
Austin 1997, *pet. ref'd*)…………………………………………...41

*Michaelwicz v. State*, 186 S.W.3d 601 (Tex.App.—
Austin   2006, *pet. ref'd*)…………………………………………….31-32

*Montgomery v State*, 810 S.W.2d 372 (Tex.Crim.App. 1990)…………35

*Moore v. State*, 999 S.W.2d 385 (Tex.Crim.App. 1999)……………… 37

*Mosley v. State*, 983 S.W.2d 249 (Tex.Crim.App. 1998)………………36

*Nilsson v. State*, 477 S.W.2d 592 (Tex.Crim.App. 1972)………………41

*O'Hara v. State*, 837 S.W.2d 139 (Tex.App.—
Austin 1992, *pet. ref'd*)…………………………………………….41

*Randolph v. State,* 353 S.W.3d 887 (Tex.Crim.App. 2011)……………21, 22

*Short v. State,* 511 S.W.2d 288 (Tex. Crim.App. 1974)………………23, 28, 29

*Simpson v. State*, 119 S.W.3d 262 (Tex.Crim.App. 2003)……………. 35, 36

*Vivanco v. State*, 2004 WL 1746706, (Tex.App.—Fort Worth
2004, *no pet.*)(mem. op. not designated for publication)………………25-27, 28, 29

*Waldo v. State,* 746 S.W.2d 750 (Tex.Crim.App.1988)……………… 37

*Weems v. State*, 382 S.W.3d 172 (Tex.App.—Eastland  2010)……….. 23-24, 28, 29

*Wood v. State,* 18 S.W.3d 642 (TexCrim.App. 2000)…………………35

**STATUTE**                                                                                        **PAGE**

Tex.Code Crim. Proc. Ann. Art. 38.07………………………………41

Tex.Code Crim. Proc. Ann. Art. 38.08……………………………... 21, 37

Tex. Const. Art. I, § 10………………………………………………21

Tex.R.App.P. 33.1(a)(1)…………………………………………..30-31

U.S. Const. Amend. V………………………………………… 21

## STATEMENT OF THE CASE

On August 15, 2012, in Cause Number CR2012-396 in the 207th Judicial District Court of Comal County, Texas, the grand jury returned an indictment against Appellant, Gregory Lopez, for the offense of Continuous Sexual Abuse of a Young Child. The indictment alleged that Appellant had committed two or more acts of sexual abuse against A.M., a child younger than 14 years of age. The acts of sexual abuse alleged in the indictment consisted of aggravated sexual assault committed by causing the penetration of A.M.'s female sexual organ with Appellant's finger, aggravated sexual assault committed by causing A.M.'s anus to contact Appellant's male sexual organ, indecency with a child committed by touching the genitals or part of the genitals of A.M. with Appellant's hands or fingers, and indecency with a child which was committed by touching a part of the body of A.M. with Appellant's genitals or part of his genitals. The indictment further alleged that the acts of sexual abuse had been committed on or about February 24, 2010 through on or about February 1, 2012, during a period that was 30 days or more in duration. (CR Vol. I at 7-8).

Prior to trial, Appellant elected for the jury to assess his punishment in the event he was convicted. (CR Vol. I at 29). On October 18, 2013, a jury found Appellant guilty of the felony offense of Continuous Sexual Abuse of a Young Child as alleged in the indictment. (RR Vol. VI at 54, CR Vol. I at 76). As a result

1

of Appellant's election, both parties then presented punishment evidence before the jury. (RR Vol. VII). On October 21, 2013, after hearing evidence and arguments of counsel on punishment, the jury assessed Appellant's punishment at a term of 50 years in the Institutional Division of the Texas Department of Criminal Justice. (RR Vol. VII at 95, CR Vol. I at 79).

Appellant filed his notice of appeal on December 20, 2013. (CR Vol. II at 185). In two points of error, based upon a claim that the prosecutor's closing argument improperly commented on his failure to testify, Appellant now seeks reversal of his criminal conviction for Continuous Sexual Abuse of a Young Child. (*Appellant's Brief* at 22 & 23).

## ISSUES PRESENTED

1. Did the prosecuting attorney's closing argument improperly comment on Appellant's failure to testify?

2. Did the trial court abuse its discretion by denying Appellant's motion for mistrial?

   a. What was the magnitude of the prejudicial effect of the prosecutor's remarks?

   b. What measures were adopted by the trial court to cure the misconduct?

   c. What was the strength of the evidence supporting Appellant's conviction?

# STATEMENT OF FACTS

A.M, the child victim in the instant case, was born in Texas on Xxxxxxxx X[th], XXXX. She was the daughter of Valerie Lee Moreno and Luis Medina. (RR Vol. IV at 111-112, 189; State's Exhibit 5). A.M. had two siblings, a brother named Xxxxxxxxxx who was two years younger than her and a little sister named Xxxxx who was four years younger. (RR Vol. IV at 112, 190-191). At the time of trial, A.M. was still only 13 years old. (RR Vol. IV at 110; RR Vol. V at 27-28).

A.M.'s mother met Appellant through her cousin, Crystal Varella, and they subsequently began dating. (RR Vol. IV at 113, 195-196). Eventually, Appellant began living with A.M., A.M.'s mother, and A.M.'s two younger siblings in a trailer on Dollar Drive. (RR Vol. IV at 114; RR Vol. V at 27-28). At times, A.M.'s mother would work late and Appellant would be left alone with the three children. (RR Vol. IV at 116; RR Vol. V at 37). The first time Appellant touched A.M. occurred at Dollar Drive on such an occasion. (Vol. IV at 114).

When the first occasion of sexual abuse occurred, A.M. was in the bedroom that Appellant shared with her mother. She and her little sister were lying on the bed and Appellant squeezed in between them. (RR Vol. IV at 114). At the time, A.M. was wearing shorts and a t-shirt. (*Id.* at 115). A.M. then felt Appellant rubbing her leg and up to her private part with his hand. His hand was inside of her clothes. (*Id.* at 114). Appellant then touched the outside of her private part. As he

3

pulled her closer to him, Appellant was also trying to put his finger into A.M.'s butt. (*Id*. at 115). At one point, he tried to put his "thing" in her butt. (Id. at 135). In addition, Appellant grabbed A.M.'s hand and tried to pull it towards his private part. (*Id*. at 119). A.M. was scared and did not know what to do. She got up and went to the restroom for a while. When she returned to the bedroom, Appellant was gone. (*Id*. at 115).

After living at the trailer at Dollar Drive, A.M. went to live with her grandfather on Richter Lane. (RR Vol. IV at 116; RR Vol. V at 34). She lived with her grandfather for approximately a year. However, she eventually started living with her mother again at the Solms Apartments. (RR Vol. IV at 116). While at the Solms Apartments, A.M. was again living with Appellant, her mother, and her two younger siblings. (RR Vol. IV at 116; RR Vol. V at 37).

On one occasion while residing at the Solms Apartments, A.M.'s mother had gone to the game room with A.M.'s grandfather and A.M. was sleeping on a couch in the living room. (RR Vol. IV at 117, 179). A.M. felt Appellant come sit down on the couch beside her and start feeling up her leg again. On this occasion, Appellant again touched A.M. on her private part (She testified that this was the part she used to go to the restroom.) with his hand. (RR Vol. IV at 117). As he did so, A.M. would move around. However, Appellant continued to touch her. Appellant then went inside of her shorts and underwear and put his finger inside of

4

A.M.'s private part. A.M. continued to move around and eventually got up and went to the restroom. When she came out, Appellant was in his room on his phone. (*Id*. at 118).

A.M. eventually made an outcry to her mother about the sexual abuse. However, Valerie didn't believe her, called her a liar, and made no effort to report the abuse to the authorities. (RR Vol. IV at 125, 154). A.M. also made an outcry to her aunt, Alicia, who reported the abuse to CPS. (RR Vol. IV at 132, RR Vol. V at 86, 90, 101). In addition, A.M. told a friend in her fifth grade class at Goodwin Frazier Elementary that she was being molested by her mother's boyfriend. That friend told her mother about A.M.'s outcry and the friend's mother also made a report to CPS. (State's Exhibit 3). After A.M. made several outcries of sexual abuse by Appellant, a criminal investigation was eventually initiated.

Janie Mott was a registered nurse and a certified sexual assault nurse examiner who was employed by both the Central Texas Medical Center and the SART Foundation of Comal County, Texas. (RR Vol. IV at 83-84). On March 1, 2012, A.M. was examined by Nurse Mott at Christus Santa Rosa Hospital in New Braunfels. (RR Vol. IV at 85, 101; State's Exhibit 4). A.M. was 11 years old at the time of the exam. (RR Vol. IV at 94).

As part of her examination, Nurse Mott obtained a medical history from A.M. To do so, she asked A.M. if anyone had ever made her feel weird or

5

uncomfortable. In response, A.M. stated, "Yes, Greg, my mom's boyfriend."

Mott then asked A.M. to tell her about that. A.M. then stated:

> Well, I was sleeping on the couch at my mom's house; my mom was not at home. I felt something touch my leg under the blanket. I did not know what it was at first. It was Greg, first he was touching my leg, then he put his hand under my shorts, but on top of my underwear like this and touched my privates like this. I did not like him touching me, so I got up and went to the bathroom. When I came out of the bathroom he was in his room, messing with his phone. I went back to sleep on the couch. I did not tell at first.

As A.M. described what had happened, she also showed Nurse Mott how Appellant had put his hand under her short's leg and touched her female sexual organ. (RR Vol. IV at 88, State's Exhibit 4 at page 7). Nurse Mott asked A.M. if she felt safe and A.M. indicated that she did not feel comfortable around Greg. (RR Vol. IV at 89, State's Exhibit 4 at page 7).

After she had completed her physical examination of A.M., Nurse Mott asked A.M. if she had thought of anything else she would like to discuss with her. A.M. then stated:

> Well it happened one other time, while my mom was at the game room in Austin. We were lying in his bed, me, my sister and my brother, and him. Greg tried to kiss me on my face and lips. Then he was like trying to put his thing in my bottom. He was scooting me back towards his private and I felt it on my bottom. I did not like it so I got up and went to the bathroom. When I came out of the bathroom, Greg was in the living room.

(RR Vol. IV at 93-94, State's Exhibit 4 at page 7).

6

David Schroeder, a detective who had been employed by the New Braunfels Police Department for 15 years, was assigned investigate the continuous sexual abuse of a child case involving A.M. on February 24, 2012. (RR Vol. III at 36-37). As a certified peace officer for the State of Texas, Schroeder held the Intermediate, Advanced, and Masters peace officer certificates. (*Id.*).

After being assigned to the case, Detective Schroeder received a phone call from Leah Amescua, an investigator with CPS. (RR Vol. III at 37-38). During that call, Detective Schroeder was informed that a forensic interview had been scheduled for A.M. at the Children's Advocacy Center on March 1, 2012. (*Id.* at 38). As part of his investigation, Detective Schroeder attended the forensic interview and watched on a closed circuit TV as A.M. was interviewed. (*Id.* at 39). During her interview, A.M. made an outcry of sexual abuse and identified the perpetrator. (*Id.* at 40).

Based on his observations during A.M.'s interview, Detective Schroeder then began a criminal investigation. As part of his investigation, Schroeder obtained a copy of the report from the SANE nurse. (RR Vol. III at 40).

Detective Schroeder also made arrangements to interview the suspect, Gregory Lopez. (RR Vol. III at 41). Schroeder's interview of Appellant took place on April 20, 2012 at the New Braunfels Police Department. (*Id.* at 42). Before the interview was conducted, Appellant filled out an information sheet. According to

7

the information provided by Appellant, he was born on May 29, 1981 and was 30 years of age at the time of the interview. (RR Vol. IV at 7-8, State' Exhibit 2). Appellant, who had traveled to the police department on his own, was told that he was free to leave at any time. However, Appellant agreed to talk to Detective Schroeder and provided a four hour interview which was recorded on video. (*Id.* at 42-43).

During the first two and a half hours of his interview, Appellant denied touching A.M. (State's Exhibit 2, Disc 1). When Detective Schroeder asked Appellant about the night that Valerie had gone to the game room with her father and left him alone with the kids, Appellant explained that A.M. would sleep on the couch. (Id. at 14:31:18[1]). However, Appellant specifically denied that he had sat on the end of the couch where A.M. was sleeping. Instead, he claimed that he was inside his room watching his little portable T.V. (*Id.* at 15:24:38).

As the interview progressed, Appellant began corroborating the details of A.M.'s outcry and eventually admitted that he was sitting on the couch with A.M. (State's Exhibit 2, Disc 2 at 16:01:45). However, he continued to specifically deny touching A.M. and stated that his hand never went under the blanket. (*Id.* at 16:02:30). When Detective Schroeder confronted him with A.M.'s statement that she felt him touching her vaginal area, Appellant replied, "No, no, no. There was

---

[1] The video of Appellant's statement contains an internal clock which appears on the screen as the video is played. Because different video software displays elapsed time differently, all references to time are based on the clock displayed within the video itself and not the counter on the video player.

nothing like that sir." (*Id.* at 16:02:50). Appellant claimed that he didn't even remember his hands touching A.M.'s leg. (*Id.* at 16:08:54). However, he then admitted that A.M. might have felt his hand touch her feet as he was attempting to get comfortable. (*Id.* at 16:09:35). He tried to explain that A.M. might have taken it the wrong way. (*Id.* at 16:10:15). Less than a minute later, Appellant told Detective Schroeder that he might have accidentally touched A.M.'s leg. (*Id.* at 16:11:07).

As Detective Schroeder continued to press Appellant about A.M.'s statement that he had rubbed her vaginal area, Appellant continued to deny that he had touched A.M. (State's Exhibit 2, Disc 2 at 16:11:32). Appellant explained that, to admit he had touched A.M.'s vagina would be throwing himself out there and saying he was a child molester. (*Id.* at 16:14:05). When specifically asked how far up A.M.'s leg he had touched, Appellant then used Detective Schroeder's leg to demonstrate. While demonstrating how far his hand had gone, he indicated that his hand had never gone beyond A.M.'s knee. (*Id.* at 16:16:50).

However, as the interview continued, Appellant admitted that he would massage the thigh area of A.M.'s leg at times and claimed that he was just showing her love. (State's Exhibit 2, Disc 2 at 16:16:50). Appellant also admitted that he had rubbed A.M.'s belly on one occasion. (*Id.* at 16:22:30). Appellant then explained that, while he was on the couch with A.M., he was just showing her love

9

and that she might have taken it the wrong way. (*Id*. at 16:22:50). Then, as the interview continued, Appellant admitted that he had been rubbing A.M.'s upper leg and that she might have just felt his hand going over her vaginal area. However, he continued to claim that A.M. had just taken it the wrong way. (*Id*. at 16:26:24).

During the interview, Appellant also confirmed that there were occasions while they were living at Dollar Drive when he would sleep in the bed with A.M. and her little brother and sister. (State's Exhibit 2, Disc 2 at 16:28:35). He claimed that A.M. would wrap her legs around him. (*Id*. at 16:28:44). Appellant again explained that he was just rubbing A.M. and that he was just showing her love. (*Id*. at 16:29:05). According to Appellant, he was rubbing A.M.'s belly and she might have thought he was rubbing her private. (*Id*. at 16:31:20). **Appellant then claimed that his hand had probably slipped and accidentally touched A.M.'s private.** He also tried to claim that he was asleep and "didn't know what the hell" he was doing when he touched A.M.'s private. (*Id*. at 16:33:03)(emphasis added). When questioned further, Appellant indicated that he had touched A.M. with his left hand. (*Id*. at 16:36:50). Appellant also described an occasion during which he claimed that A.M. had "accidentally" touched his male sexual organ. (*Id*. at 16:41:00). Additionally, he admitted that he had kissed A.M. on the lips on at least one occasion. (*Id*. at 16:55:40).

10

When Detective Schroeder asked Appellant what he would say to A.M. if she asked him why he had touched her private, Appellant replied, "I was just showing you love." (State's Exhibit 2, Disc 2 at 16:58:22). Appellant also apologized to Detective Schroeder for lying to him. (*Id*. at 17:01:35). He stated that he wouldn't mind if he had to take classes or got probation. (*Id*. at 17:01:45). Appellant also conceded that he knew it was a mistake to touch A.M.'s vagina. (*Id*. at 17:05:25). Finally, when Detective Schroeder asked Appellant if he had touched Xxxxxx the way he had touched A.M., Appellant replied, "Hell no, that's my baby." (*Id*. at 17:13:28).

The criminal case arising from Appellant's sexual abuse of A.M. was tried before a Comal County jury on October 14 through October 21, 2013. (RR Vol. I at 1).

During voir dire, the prosecuting attorney questioned the venire members on their ability to follow the law in regards to the Defendant's 5th Amendment right to remain silent. In explaining that right, the prosecutor stated:

> All right.  How many of you ever heard somebody say that there's two sides to every story?  All of you because all of you have mothers. Every mother tells their kid that at some point I'm pretty sure.  My mother used to tell me that mostly when she wanted to hear my little sister's side of the story I found.
>
> How many of you think, to be fair, you should hear both sides?  A lot of people do.  What I will tell you in a criminal case is that that's not necessarily the right thing.  And the reason for that is there is a right

not to testify. It is called the Fifth Amendment. You have a right not to incriminate yourself. You have a right not to testify in a case.

And Mr. Sergi may spend a lot of time talking to you about all of the reasons why a defendant would choose not to. It really doesn't matter. It could be that his lawyer tells him not to. It could be he's scared. It could be he thinks I'm really mean. It doesn't really matter because the law is such it's a right we all have. And that right would be worthless if a jury could then hold it against you if you exercised it. Does everybody understand that?

The moment that: I'm just going to – if he doesn't tell his side, I'm going to find him guilty. Well, that right doesn't mean a lot, does it? And that's why you can't do that if you are going to be on a jury. And the Court's charge will tell you that you cannot only not hold it against the defendant, but you can't refer to it or allude to it in any way. It cannot be considered. Does everybody understand that? Does everybody understand why it's that way? Can everybody here follow that law?

This voir dire was conducted without objection from the defense. (RR Vol. II at 84-86).

Immediately after discussing the defendant's right not to testify, the prosecutor began explaining the one witness rule as set out by Article 38.07 of the Code of Criminal Procedure. That explanation was as follows:

**Mr. McCrary:** Anybody here have any idea how many witnesses I have to call in a case? Is there a rule? There's actually a law in Texas, it's 38.07 of the Code of Criminal Procedure, that says a conviction for continuous sexual abuse of a young child, aggravated sexual assault or indecency with a child, is supportable on the uncorroborated testimony of a victim if the victim was younger than 17 years of age at the time of offense. What does that mean? Anybody?

**Venireperson Williams:** One witness?

12

**Mr. McCrary:**  I can call one witness.  If I call the victim in here and she comes in here and she testifies that this happened on two or more occasions and she's under 14 and the defendant is over 17 and there's more than 30 days of dates in between it and the jury believes her beyond a reasonable doubt, that's it.

I don't have to call anybody else. I don't have to call her momma.  I don't have to call a doctor.  I don't have to call anybody.  Does everybody understand that?  Why do you think that is the law?  Anybody?

**Venireperson Diggles:**  It only takes one person.

**Mr. McCrary:**  It only takes one person.  How many people do you think are usually around when this kind of thing is going on?

**Venireperson Garcia:**  Two.

**Mr. McCrary:**  Two.  And I've already talked to you about one having a right not to testify, right?  So that one I can't call that and you can't hold that against him if you're on the jury.  Where does that leave me?

**Venireperson Diggles:**  One.

**Mr. McCrary:**  So if a guy can get – or a girl, whichever. If a person can get a child alone and do something like this to them and the only other person there is a child who can be called as a witness, does that mean that they get by with it?  That's why the law is written that way.  The legislature wanted to make it clear that it doesn't have to take anything other than just if you bring the child in and the jury believes them, that's it.  Now that – if – belief is an important part, because you do have to believe it.  And if you don't, then so be it.  But that's – that's how that works.  Does anybody here disagree with that law?

As with the prosecutor's explanation of the defendant's right to remain silent, defense counsel did not object to the prosecutor's voir dire concerning Article 38.07. (RR Vol. II at 86-87).

13

Later, during his own voir dire, defense counsel also discussed the defendant's right to remain silent and the reasons why a person might choose not to testify in a criminal case. During this discussion, several members of the panel provided reasons why a person might choose to remain silent. (RR Vol. II at 131-133).

After the close of evidence, the Court's charge was read to the jury members by the Court. Part of the charge given to the jury specifically stated:

> Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a privilege accorded to a defendant and, in the event he elects not to testify, that fact cannot be taken as a circumstance against him. In this case, the defendant, Gregory Lopez, has elected not to testify and you are instructed that you cannot and must not refer to or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against the defendant.

(RR Vol. VI at 18).

After the charge was read to the jury, during his final closing argument, the prosecutor returned the theme from his voir dire and stated:

> And that brings you down to the case. I told you in the beginning there's usually two people present when this occurs that can testify about it. One of them has a right not to. You can't hold it against him. But you get to hear both sides –

However, before the prosecutor could complete his statement, defense counsel objected and asked to approach the bench. (RR Vol. VI at 45). At the bench, defense counsel complained, "Your Honor, he's commenting on my client's failure

14

to testify. And I object." In response, the prosecutor explained, "It's in the charge.

I said they couldn't hold it against him." Defense counsel then responded:

> That may be, Your Honor. But he's commenting in his argument on the failure to testify and that violates my client's Fifth Amendment rights, it violates his Texas Constitution due course of law provision, the Fourteenth Amendment, Your Honor.
>
> His—his comment that he didn't testify, Your Honor, is a clear violation of the Fifth Amendment. He has a right not to testify. It's in the Court's charge. They can consider it, but he sure can't argue about it.

The prosecutor then replied, "I can talk about anything that's in the charge. That's

--" Upon prompting from the Court, defense counsel then objected and asked the

Court to instruct the jury to disregard the prosecutor's last comment. The Court

sustained the objection. Defense counsel then requested a mistrial. (*Id*. at 46)

However, that request was denied. (*Id*. at 47).

> After the discussion at the bench, the Court instructed the jury as follows:
>
> Ladies and gentlemen, I'm going to ask you to disregard anything that may violate the following paragraph.
>
> Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a privilege accorded to a defendant and, in the event he elects not to testify, that fact cannot be taken as a circumstance against him.
>
> In this case, the defendant, Gregory Lopez, has elected not to testify and you are instructed that you cannot and must not refer to or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against the defendant.

I will instruct the State not to refer to the defendant's right to remain silent for any purpose.

(RR Vol. VI at 47).

After the Court instructed the jury, the prosecutor continued his argument by stating, "You still get to hear from the defendant because he talked to the police. It's in evidence. Counsel wants to talk about that videotape." (RR Vol. VI at 47). The state's attorney then spent the remainder of his closing argument pointing out the numerous incriminating statements made by the defendant during his videotaped interview with Detective Schroeder. (Id. at 48-50). Notably, defense counsel made no additional objections during the prosecutor's closing argument. (*Id*. at 47-53).

The jury subsequently returned a verdict of guilty. (RR Vol. VI at 54). At the request of defense counsel, the jury members were polled and affirmed that their verdict was unanimous. (*Id*. at 54-56). The trial court then excused the jury until 9:00 a.m. on Monday morning. (*Id*. at 58). After the jury was excused, the trial court specifically asked, "On this case is there anything else we need to talk about?" At that time, defense counsel made no objections or motions. (*Id*. at 60).

The following Monday, defense counsel again moved for a mistrial. The following exchange then took place:

> **Court:** Let the record reflect that counsel and defendant are present in the courtroom. The jury is not.

Mr. Sergi, you had an issue you wanted to –

**Mr. Sergi:** Yes, Your Honor.

I'm going to renew my motion for mistrial. As the Court will recall, during final arguments Mr. McCrary said some word to the effect of: There were only two people there. We only heard from one of them. And you sustained my objection and – and gave an instruction to disregard.

Your Honor, I believe that falls squarely—squarely into the *Norton* case out of Dallas that was as recently as August 29th in an unpublished opinion cited as precedent by the Austin Court of Appeals in a case in which – the appellant's name is not actually on – it's *Briscoe v. State*, Your Honor. And I would ask and renew my motion for mistrial in light of that.

And very, very particularly, Your honor, in *Norton* the Court says that when – "When an objection is sustained and the trial court instructs the jury but denies the Defendant's motion for a new trial, the question is whether the trial court erred in denying a mistrial."

"To determine whether error is reversible, we consider whether the argument was extreme, manifestly improper, injects new and harmful facts into the case or violates a mandatory (inaudible)

**The Reporter:** Violates? I'm sorry.

**Mr. Sergi:** A mandatory or statutory provision.

In that case, Your Honor, as I recall – and I do not have a copy of the exact wording. But as I recall, the wording Mr. McCrary used was: There were only two people in the room and you only heard from one of them. And –

**The Court:** That is part of what he said.

**Mr. Sergi:** Yes, sir. And then you – you sustained my objection. And then we – I asked to disregard. You read the entire instruction. At that point, Your Honor, I did ask for a mistrial.

And this is not a situation, as in other cases, with Mr. – which Mr. McCrary has been involved, where there was comparative – where there – you can argue by inference he may not have testified. This is a direct comment, Your Honor.

And I believe that *Norton* would require and I believe, as I said, the Austin Court of Appeals in the *Briscoe* case as recently as August of this year has recognized the continued validity of the *Briscoe* case. And therefore, Your Honor, I would ask you grant the mistrial at this point.

**Mr. McCrary:** My response, Your Honor, is my argument isn't what he says it is. My argument was, as I talked to them in voir dire, that there are only usually two people present when this kind of case occurs: One of them I can call and one of them I can't because they have a Fifth Amendment right. And you cannot hold that against him. I specifically said: That cannot be held against him. And my – the rest of my argument as I started into it was: But you did hear from the defendant because you got to see his video.

At some point in there he objected and the Court called me up here and instructed the jury. But my instruction, my argument was in no way were they to consider it in any way. The fact is my argument was exactly what your charge said, that they could not hold that against him.

It is not an improper argument in the first place. But the Court, out of an abundance of caution, gave him a very detailed instruction and I moved away from it and never went back to that area of argument. I have briefed this issue and I've argued it before to the Courts of Appeals. It is not an improper argument. Motion for mistrial should be denied.

**Mr. Sergi:** Your Honor, there – that's the exact wording he used – or close to the exact wording as I recall. And that's exactly what was objectionable in the *Nort* – in that case, Your Honor.

Mr. McCrary is an experienced prosecutor. He's a first district – assistant district attorney. There are several cases in which this issue

– the issue of improper jury argument has been resolved in his favor, but I have not found any case that is on point as that, Your Honor.

And, Your Honor, here's a copy of—

**The Court:**  Is there a confession in that case?

**Mr. Sergi:**  In *Briscoe*?  I don't believe there was, Your Honor.  But I –

**The Court:**  Motion denied.

(RR Vol. VII at 7-10).

## STATE'S RESPONSE TO APPELLANT'S FIRST POINT OF ERROR

### SUMMARY OF THE ARGUMENT

In his first point of error, Appellant asserts that the prosecutor made an impermissible comment alluding to his failure to testify. (*Appellant's Brief at 11*). However, when reviewed in context, the prosecutor's argument in the instant case did not negatively comment on Appellant's failure to testify.  Instead, tracking the court's charge, the prosecuting attorney correctly told the jury that they could not hold Appellant's silence against him.  Therefore, the prosecutor's statements did not amount to an improper comment on Appellant's failure to testify.

In addition, as part of his argument that the prosecutor's comment was improper, Appellant correctly states that an argument, when combined with physical actions, can be of such a character that the jury would naturally and necessarily take it to be a comment on a defendant's failure to testify. (*Appellant's

19

*Brief* at 13). Then, in an attempt to strengthen his argument that the prosecutor's argument in the instant case was improper, Appellant asserts that the prosecutor engaged in the "physical action of looking and pointing to the defense table" while making his closing argument. (*Id.* at 15, 16). However, this assertion is simply not supported by the record.

## AUTHORITIES

The law provides for, and presumes, a fair trial free from improper argument by the State. *Ex parte Lane,* 303 S.W.3d 702, 712 (Tex.Crim.App.2009). Proper jury argument must generally fall within one of four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) responses to argument of opposing counsel; and (4) pleas for law enforcement. *Freeman v. State,* 340 S.W.3d 717, 727 (Tex.Crim.App. 2011); *Jimenez v. State,* 240 S.W.3d 384, 407 (Tex.App.—Austin 2007, *pet. ref'd*). The fact that a defendant did not testify does not fall into any of those categories and may not be the subject of comment by the prosecutor. *Cruz v. State,* 225 S.W.3d 546, 548 (Tex.Crim.App. 2007); *Bustamante v. State,* 48 S.W.3d 761, 765 (Tex.Crim.App. 2001).

A comment on a defendant's failure to testify violates both the state and federal constitutions as well as Texas statutory law. *Randolph v. State,* 353 S.W.3d 887, 891 (Tex.Crim.App. 2011); *see* U.S. Const. Amend. V; Tex. Const. Art. I, § 10; Tex.Code Crim. Proc. Ann. Art. 38.08; *see also Griffin v. California,* 380 U.S.

609, 615 (1965). However, the implication that the prosecutor's comment referred to the defendant's failure to testify must be a clear and necessary one. *Randolph,* 353 S.W.3d at 891; *Bustamante,* 48 S.W.3d at 767. If the language might reasonably be construed as merely an implied or indirect allusion, there is no violation. *Randolph,* 353 S.W.3d at 891; *Busby v. State,* 253 S.W.3d 661, 666 (Tex.Crim.App. 2008). The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. *Randolph,* 353 S.W.3d at 891; *Cruz,* 225 S .W.3d at 48; *see Bustamante,* 48 S.W.3d at 765 (collecting cases). In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character. *Randolph,* 353 S.W.3d at 891; *Cruz,* 225 S.W.3d at 548; *Bustamante,* 48 S.W.3d at 765. Courts are not to find that the prosecutor manifestly intended to comment on the defendant's failure to testify if some other explanation for the remark is equally plausible. *Randolph,* 353 S.W.3d at 891. In assessing whether the defendant's rights have been violated, courts must view the prosecutor's argument from the jury's standpoint and resolve any ambiguities in the language in favor of its being a permissible argument. *Id.*

In *Bouchillon v. State,* the State's attorney made the following argument:

Now the law also instructs that the failure of the defendants to testify should not be taken as a circumstance against him and, of course, in

21

this case they did not testify and you should follow this court's instruction and you should not consider that as any evidence-

540 S.W.2d 319, 321 (Tex.Crim.App. 1976). In response, defense counsel objected that the prosecutor's argument was improper because it constituted a comment on the defendant's failure to testify. *Id.*

On appeal, the defendant contended that the State's argument had constituted an improper comment on his failure to testify. *Id.* Addressing that contention, the Court noted that, although the prosecutor had specifically referred to the defendant's failure to testify, he had done so in the context of explaining the court's charge. The Court also stated, "He did not ask the jury to consider the appellant's failure to testify against them, but rather cautioned the jury not to do so." As a result, the Court of Criminal Appeals overruled the defendant's contention that the prosecutor's argument had constituted an improper comment on his failure to testify. *Id.* at 322; *see also Fuentes v. State*, 991 S.W.2d 267, 275 (Tex. Crim. App. 1999) (finding that the comment complained of was a recognition that the defendant possessed a right not to testify and holding that such a comment is distinguishable from cases in which the State comments negatively on the defendant's failure to testify); *Short v. State,* 511 S.W.2d 288, 291 (Tex. Crim.App. 1974) (prosecutor's argument cautioning jury not to consider defendant's failure to testify because "we wouldn't want this all to be for naught"

22

held to be "no more than paraphrasing the charge" and "not in derogation of appellant's rights, but ... in full harmony with them").

In *Weems v. State*, the Eastland Court of Appeals also addressed an argument that was substantially similar to the argument in the instant case. 382 S.W.3d 172 (Tex.App.—Eastland 2010). In *Weems*, the prosecutor argued as follows:

> Sometimes the only person who is an eye-witness is the person who committed the crime, and we're not allowed to call them as the State, and they have a right not to testify and the State—and you can't hold that against them, but we can still as a State prosecute them and prove that they committed a crime, and we can do that by looking at circumstantial evidence.
>
> The only one who can testify to it directly, the law doesn't allow us to even consider whether or not he testifies.

*Id.* at 178-79.

On appeal, the defendant argued that the trial court had erred in denying his motion for mistrial because the prosecutor had commented on his failure to testify. *Weems* at 178. Specifically, he complained about the prosecutor's statement that "we're not allowed to call them as the State, and they have a right not to testify and the State—and you can't hold that against them." *Id.* at 179. The defendant also complained about the prosecutor's statement that "[t]he only one who can testify to it directly, the law doesn't allow us to even consider whether or not he testifies." *Id.* at180. Addressing those complaints, the Eastland Court noted that the

23

prosecutor had made the first statement in the context of explaining that the State may use circumstantial evidence and was not required to present eyewitness testimony to prove that an individual committed a crime. *Id.* at 179-80. The court also noted that the trial court's jury charge contained the following instruction regarding the defendant's election not to testify:

> Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a privilege afforded to a defendant, and, in the event he elects not to testify, that fact cannot be taken as a circumstance against him. In this case, the Defendant has elected not to testify, and you are instructed that you cannot and must not refer or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against the defendant.

The Court then explained that, in the complained-of comments, the prosecutor essentially restated the trial court's instructions to the jury and had reminded the jury that it could not consider the defendant's election not to testify. The Court stated that, "[t]he prosecutor recognized appellant's right not to testify; she did not comment negatively on appellant's failure to testify." As a result, the Court held that the prosecutor's statements did not amount to improper comments on the defendant's failure to testify. *Id.* at 180.

In *Bullard v. State*, the following exchange took place during the State's closing argument:

> MR. McCLELLAN [THE PROSECUTOR]: During this trial you know that the defendant has been given all those protections. He has been given the presumption of innocence, the right to trial by jury. He

has been given the right to be represented by competent counsel. He has been given the right not to testify and not to have that held against him.

MR. PATTERSON [DEFENSE COUNSEL]: Object to the comments of this defendant's right not to testify.

THE COURT: That will be overruled.

706 S.W.2d 329, 331 (Tex.App.—Houston [14ᵗʰ Dist.] 1986).

On appeal, the defendant complained that the trial court had erred by allowing the prosecutor to comment on his failure to testify. In response the court noted that it is axiomatic that the state may not comment on the defendant's failure to testify. However, the Court found the prosecutor's argument in that case was merely a recitation of some of a defendant's rights at trial, not a comment on the defendant's failure to testify. As a result, the Court held that the state's argument was not improper and overruled the defendant's point of error. *Bullard* at 331.

In *Vivanco v. State*, the following exchange took place during the State's closing argument on punishment:

[State]: This is the punishment phase. This is the time for you to learn the good, the bad, and the ugly about a defendant. He doesn't testify. You know that already. That's in the charge.

[Defense Counsel]: Objection, Your Honor. She's commenting on the-

THE COURT: Sustained.

[Defense Counsel]: Ask for a[n] instruction to disregard.

25

THE COURT: Jury will so disregard.

[Defense Counsel]: Pursuant to a mistrial, Your Honor.

THE COURT: Denied.

[State]: I ask you to look over the charge, and in this charge, it will tell you that you cannot hold it against him, and I ask you to not hold it against him if he doesn't testify, whether it's at guilt/innocence or here. That's what makes our country great.

*Vivanco v. State*, 2004 WL 1746706, at *2-3 (Tex.App.—Fort Worth 2004) (mem. op. not designated for publication).

On appeal, the defendant argued that the trial court had erred by failing to declare a mistrial after the prosecutor made an argument referencing his failure to testify. Addressing that argument, the Fort Worth Court noted that the trial court had already instructed the jury that the defendant's election not to testify could not be used against him and that the jury could not allude to, comment on, or discuss the defendant's election not to testify. The Court recognized that the State's remark was made in the context of discussing the court's jury charge and simply restated what the jury was already told. The Court found that the prosecutor had not asked the jury to consider the defendant's failure to testify in their deliberations or to draw a negative inference from his failure to testify. To the contrary, the Court found that the State had reminded the jurors not to consider the defendant's failure to testify. As a result, the Court held that prosecutor's remarks did not amount to an improper comment on the defendant's failure to testify. *Id.* at *4.

26

## ARGUMENTS

In the instant case, as set out above, the only portion of the prosecutor's argument which was objected to at trial was the following:

> I told you in the beginning there's usually two people present when this occurs that can testify about it. One of them has a right not to. You can't hold it against him. But you get to hear both sides –

(RR Vol. VI at 45).

When considered in the context of the entire trial, it is clear from the statement "I told you in the beginning…" that the prosecutor was referring to his voir dire explaining the one witness rule as set out by Article 38.07 of the Code of Criminal Procedure. (RR Vol. II at 86-87). Then, as he had done during voir dire, the prosecutor reminded the jury that Appellant's choice not to testify could not be held against him. In addition, before he was interrupted by defense counsel's objection, the prosecutor attempted to explain that the jury got to hear both sides of the story in the instant case. (*See Appellee's Brief* at 13). This was clearly an attempt to direct the jury's attention to the many incriminating admissions made by Appellant during his interview with Detective Schroeder.

From the precedent cited above, there can be no doubt that a prosecutor is not allowed to argue that a defendant's silence should be held against them. However, it is also clear that an argument recognizing that a defendant has a right to remain silent and that the exercise of such right cannot be held against the

27

defendant is distinguishable from an argument in which the State comments negatively on the defendant's failure to testify. *See Fuentes v. State*, 991 S.W.2d 267, 275 (Tex. Crim. App. 1999) (finding that the comment complained of was a recognition that the defendant possessed a right not to testify and holding that such a comment is distinguishable from cases in which the State comments negatively on the defendant's failure to testify). As a result, numerous Texas appellate courts have reviewed closing arguments similar to the one made by the prosecutor in the instant case and found that they did not improperly comment on the defendant's failure to testify. *See Bouchillon*, 540 S.W.2d at 321; *Fuentes*, 991 S.W.2d at 275; *Short*, 511 S.W.2d at 291; *Weems*, 382 S.W.3d at 178; *Bullard*, 706 S.W.2d at 331; *Vivanco*, 2004 WL 1746706, at *2-3.

The prosecutor in the instant case never even suggested to the jury that Appellant's choice to remain silent should be held against him. To the contrary, he carefully voir dired the venire and committed its members to follow the law concerning Appellant's right to remain silent. (RR Vol. II at 84-86). Furthermore, in the argument now complained of (tracking the court's charge), he again cautioned the jury that Appellant's silence could not be held against him. Thus, it is clear that the prosecutor never negatively commented on Appellant's failure to testify and his argument was not improper. *See Bouchillon*, 540 S.W.2d at 321;

*Fuentes*, 991 S.W.2d at 275; *Short*, 511 S.W.2d at 291; *Weems*, 382 S.W.3d at 178; *Bullard*, 706 S.W.2d at 331; *Vivanco*, 2004 WL 1746706, at \*2-3.

Additionally, as noted above, in an attempt to strengthen his argument that the prosecutor's argument in the instant case was improper, Appellant asserts that the prosecutor engaged in the "physical action of looking and pointing to the defense table" while making his closing argument. (*Appellant's Brief* at 15, 16). However, Appellant fails to cite any evidence in the record showing that the prosecutor looked or pointed at the defense table as suggested. Notably, he instead cleverly places the footnote citing the record before the phrase "while turning and pointing at the defense table." (*Appellant's Brief* at *16*). More notably, during Appellant's trial, defense counsel made no mention of such acts by the prosecutor during his initial objection to the prosecutor's argument nor did he assert such acts had occurred when he again urged his motion for mistrial several days later. (RR Vol. VI at 45-46, RR Vol. VII at 7-10). Thus, it is clear that Appellant's belated claim the prosecutor engaged in the "physical action of looking and pointing to the defense table" while making his closing argument, made for the first time on appeal, is without merit or proof. *See Garcia v. State*; 513 S.W.2d 559, 562 (Tex.Crim.App. 1974) (holding that the record did not support the claim that the assistant district attorney stood behind appellant and thus directed his remarks to his failure to take the stand.)

In his brief, Appellant also asserts, "…even after the court instructed 'the State not to refer to the Appellant's right to remain silent for any purpose,' the State blatantly disregarded the courts (sic) instruction and continued its jury argument directly indicating Lopez confessed to the crime and gave a specific time on the video, 17:35:55, along with a narration of what Lopez said, claiming it was Lopez confessing." (*Appellant's Brief* at 16). However, although he makes the bold assertion that the prosecutor blatantly violated the court's instruction, Appellant wholly fails to explain how citing his incriminating statements to Detective Schroeder was in any way a comment on Appellant's right to remain silent. Thus, by using the phrase "the State blatantly disregarded the courts (sic) instruction," it would appear that Appellant is deliberately attempting to mislead this Court.

Appellant's argument also begs the question, if such an argument so blatantly violated the trial court's instruction, where exactly was defense counsel's objection to this argument? As set out above, after the trial court sustained defense counsel's initial objection and instructed the jury, the prosecutor completed his closing argument without any further objections. (RR Vol. VI at 47-51). Therefore, even if the remainder of the prosecutor's argument was improper, it is clear that any complaint concerning that portion of the argument was not preserved for appellate review and has been waived. *See* Tex.R.App.P. 33.1(a)(1) ("As a prerequisite to presenting a complaint for appellate review, the record must show

that the complaint was made to the trial court by a timely objection...."), *see also Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Crim.App.1996) (holding Appellant waived complaint that prosecutor commented on his failure to testify during closing argument by failing to object).

However, even if defense counsel had objected the remainder of the prosecutor's argument in the instant case, it is clear that the prosecutor's references to the statement given by Appellant to Detective Schroeder, which was admitted into evidence, was in no way a comment on Appellant's right to remain silent. *See Harris v. State*, 684 S.W.2d 687, 690 (Tex.Crim.App. 1984) (holding that prosecutor's argument, which sought to remind the jury of the defendant's statements to a police officer at the scene of the arrest and at the police station, did not violate Article 38.08); *Garcia v. State*, 126 S.W.3d 921, 924 (Tex.Crim.App. 2004) (holding that, when a defendant makes a statement which is admitted into evidence, the prosecutor's reference to that statement is not a comment on the defendant's failure to testify); *Cruz v. State*, 225 S.W.3d 546, 549-550 (Tex.Crim.App. 2007) (holding that prosecutor's statements to the jury referred to the defendant's own written statement which had been admitted into evidence and were therefore not a comment on the defendant's failure to testify).

Finally, it is well established that only the trial court can commit error. *See Michaelwicz v. State*, 186 S.W.3d 601, 610 (Tex.App.—Austin 2006, *pet. ref'd*)

(holding that only the trial judge can commit error and that, as a general matter, error can only be committed only when the trial judge refuses a request for action or takes action over objection.); *see also Chimney v. State,* 6 S.W.3d 681, 703 (Tex.App.—Waco 1999, *pet. ref'd*) (in improper jury argument situations, any error can only arise from trial court's actions—overruling an objection, denying an instruction to disregard, or denying a mistrial); *Guilder v. State*, 794 S.W.2d 765, 770 (Tex.App.—Dallas 1990) (noting that the appellant's fourth and fifth points of error, directing the Court to the prosecutor's commission of error, was clearly a misstatement since only the trial court could commit error which could be the basis of a reversal).

In the instant case, the trial court sustained defense counsel's objection and instructed the jury to disregard. Therefore, the only adverse ruling in the instant case was the trial court's denial of Appellant's motion for mistrial and that is the only possible occasion where the trial court could have made a mistake. Thus, even if the prosecutor's argument was improper, this is not a proper point of error. Instead, the proper point of error is whether or not the trial court abused its discretion in denying Appellant's motion for mistrial. *see Archie v. State*, 340 S.W.3d 734, 738-39 (Tex.Crim.App. 2011). That issue is addressed below in response to Appellant's second point of error.

For all of these reasons, Appellant's first point of error is without merit and should be denied.

## STATE'S RESPONSE TO APPELLANT'S SECOND POINT OF ERROR

### SUMMARY OF THE ARGUMENT

In his second point of error, Appellant asserts that the trial court abused its discretion by denying his motion for directed verdict after the prosecutor had made an improper argument resulting in Constitutional error. (*Appellant's Brief* at 18).

In his brief, Appellant correctly sets out the three-part analysis for determining whether or not a trial court abused its discretion in denying a motion for a mistrial. (*Appellant's Brief* at 19). However, he then fails to properly apply those factors. For example, he asserts that "the prosecutor's comment, taking the prosecutor's final jury argument as a whole, the improper comment was directed at the fact the Appellant had not testified." (*Id*. at 19). Based on this fact alone, he then concludes that the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks) weighs in favor of reversal. (*Id*. at 20). Then, in analyzing the "efficacy of any cautionary instruction by the judge," Appellant completely ignores the instruction given by the trial court and instead asserts that "there could hardly be a more 'blatant example' of a prosecutor's comment alluding to an accused's failure to testify." (*Id*. at 20). Finally, in analyzing the

33

third factor, which looks at the strength of the evidence supporting the conviction, Appellant recognizes that a conviction for Continuous Sexual Abuse is supportable upon the testimony of the complainant alone. He then states, "However, without a confession from the Appellant, it is very unlikely that the jury would have convicted based off that testimony alone." (*Id*. at 21). Thus, Appellant wholly ignores his confession in his analysis of the strength of the State's evidence of his guilt and concludes that his conviction was unlikely absent the prosecutor's improper argument. (Id. at 21-22).

Contrary to Appellant's arguments, when the three-part analysis for determining whether or not a trial court abused its discretion in denying a motion for a mistrial is properly applied to the facts of the instant case, it is clear that the trial court did not abuse its discretion in denying Appellant's motion for a mistrial.

## AUTHORITIES

When a trial court sustains a defendant's objection to a prosecutor's argument and instructs the jury to disregard the argument, the only adverse ruling is the trial court's denial of the defendant's motion for mistrial. Therefore, that is the only possible occasion where the trial court could have made a mistake. *Archie v. State*, 340 S.W.3d 734, 738-39 (Tex.Crim.App. 2011). Thus, the proper issue on appeal is whether the trial court's refusal to grant the defendant's motion for

mistrial was an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004); *Archie* at 738-39.

In *Montgomery v. State*, the Court of Criminal Appeals adopted the test for abuse of discretion from the Texas Supreme Court as:

> The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without any reference to any guiding rules and principals. Another way of stating the test is whether the act was arbitrary or unreasonable. The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred.

Therefore, a trial court's ruling should be affirmed if the court followed the proper analysis and balancing factors, even if the appellate court disagrees with the weight placed on the individual factors. As explained by the Court of Criminal Appeals, a trial judge has a limited right to be wrong as long as the result is not reached in an arbitrary or capricious manner. *See Montgomery v State*, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990).

Furthermore, a mistrial is only the appropriate remedy for "highly prejudicial and incurable errors." *Wood v. State,* 18 S.W.3d 642, 648 (TexCrim.App. 2000); *Simpson v. State*, 119 S.W.3d 262, 272 (Tex.Crim.App. 2003). Only in extreme circumstances, when the prejudice caused by an improper jury argument is incurable, i.e. "so prejudicial that expenditure of further time and

expense would be wasteful and futile," will a mistrial be required. *Hawkins,* 135 S.W.3d at 77*; see also Simpson,* 119 S.W.3d at 272.

To evaluate whether a trial court abused its discretion in denying a mistrial for improper jury argument, the Court of Criminal Appeals has adopted the three factors from *Mosley v. State.* That test balances the following three factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Hawkins,* 135 S.W.3d at 77; *Archie*, 340 S.W.3d at 738-39.

Prejudice is clearly the touchstone of the first factor in the test adopted by the Court of Criminal Appeals. Although the "severity of the misconduct" can be considered in assessing an argument's prejudicial effect, an appellate court errs if it assesses "the severity of the misconduct" in isolation from the resulting prejudice. Furthermore, the prosecutorial misconduct should not be characterized as "severe" simply because it violates a "mandatory statute." As the Court of Criminal Appeals has explained, a prohibition's source—whether it be statute, rule, or common law—is not particularly relevant to how prejudicial an argument is or whether an instruction to disregard can cure the argument's prejudicial effects. *Hawkins*, 135 S.W.3d at 77-78.

36

The Court of Criminal Appeals has also stated that the "presumption that an instruction [to disregard] generally will not cure comment on failure of the accused to testify ... has been eroded to the point that it applies only to the most blatant examples." *Dinkins v. State,* 894 S.W.2d 330, 356 (Tex.Crim.App.1995) (quoting *Waldo v. State,* 746 S.W.2d 750, 753 (Tex.Crim.App.1988)). Otherwise, the Court has tended to find instructions to disregard to have force. *Id*.; *Moore v. State*, 999 S.W.2d 385, 405-406 (Tex.Crim.App. 1999). Furthermore, the Court of Criminal Appeals has found that an especially severe and attention-grabbing instruction to disregard can cure the harm from even repeated comments on a defendant's failure to testify in violation of Article 38.08. *See Davis v. State*, 645 S.W.2d 817, 819 (Tex.Crim.App. 1983); s*ee also Espinoza v. State*, 843 S.W.2d 729, 731 (Tex.App.—Austin 1992, pet. ref'd).

## ARGUMENTS

### MAGNITUDE OF THE PREJUDICIAL EFFECT
### OF THE PROSECUTOR'S REMARKS

In the instant case, as set out above, the only portion of the prosecutor's argument which was objected to at trial was the following:

> I told you in the beginning there's usually two people present when
> this occurs that can testify about it. One of them has a right not to.
> You can't hold it against him. But you get to hear both sides –

(RR Vol. VI at 45).

37

When considered in the context of the entire trial, it is clear that the prosecutor's argument did not even suggest that Appellant's exercise of his right to remain silent should be held against him. Instead, in keeping with the court's charge, the prosecutor's reference to Appellant's right to remain silent expressly stated, "One of them has a right not to. You can't hold it against him." Thus, as was fully discussed in the response to Appellant's first point of error, it is evident that this argument did not negatively comment on Appellant's right to remain silent and was not improper. *See Fuentes*, 991 S.W.2d at 275 (finding that the comment complained of was a recognition that the defendant possessed a right not to testify and the State respected that right).

However, even if the prosecutor's comments were deemed to be improper, it is difficult to fathom how Appellant could have possibly been prejudiced by the prosecutor reminding the jury of their obligation to respect Appellant's choice to remain silent. Thus, it is clear that the magnitude of the prejudicial effect, if any, of the prosecutor's remarks would have been slight. As a result, this factor should be heavily weighted in favor of the trial court's denial of Appellant's motion for a mistrial.

## THE EFFICACY OF ANY CAUTIONARY
## INSTRUCTION BY THE JUDGE

After the close of evidence and prior to the prosecutor's argument, the Court's charge was read to the jury members by the Court. Part of the charge given to the jury specifically stated:

> Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a privilege accorded to a defendant and, in the event he elects not to testify, that fact cannot be taken as a circumstance against him. In this case, the defendant, Gregory Lopez, has elected not to testify and you are instructed that you cannot and must not refer to or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against the defendant.

(RR Vol. VI at 18).

Additionally, after sustaining defense counsel's objection to the prosecutor's closing argument, the trial court instructed the jury:

> Ladies and gentlemen, I'm going to ask you to disregard anything that may violate the following paragraph.
>
> Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a privilege accorded to a defendant and, in the event he elects not to testify, that fact cannot be taken as a circumstance against him.
>
> In this case, the defendant, Gregory Lopez, has elected not to testify and you are instructed that you cannot and must not refer to or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against the defendant.
>
> I will instruct the State not to refer to the defendant's right to remain silent for any purpose.

(RR Vol. VI at 47).

When reviewing the trial court's instructions to the jury in the instant case, particularly those given after sustaining defense counsel's objection to the prosecutor's argument, it is clear that the trial court went far beyond simply instructing the jury to disregard the prosecutor's argument. Instead, the trial court re-read the entire paragraph from the court's charge concerning Appellant's right to remain silent to the jury and instructed the jury to disregard anything that might violate the Court's instructions. Additionally, in front of the jury, the court specifically instructed the prosecutor, "I will instruct the State not to refer to the defendant's right to remain silent for any purpose." Thus, this somewhat severe and attention-grabbing instruction to disregard was more than sufficient to cure any harm that might have resulted from the prosecutor's comments reminding the jury that they couldn't hold Appellant's decision to remain silent against him. S*ee Davis v. State*, 645 S.W.2d 817, 819 (Tex.Crim.App. 1983; *see also Espinoza v. State*, 843 S.W.2d 729, 731 (Tex.App.—Austin 1992, *pet. ref'd*). As a result, this factor should also be heavily weighted in favor of the trial court's denial of Appellant's motion for a mistrial.

## STRENGTH OF THE EVIDENCE
## SUPPORTING THE CONVICTION

Under Texas law, it is clear that a conviction for continuous sexual abuse of a young child, aggravated sexual assault or indecency with a child is supportable

40

on the uncorroborated testimony of a victim if the victim was younger than 17 years of age at the time of offense. Tex.Code Crim. Proc. Ann. Art. 38.07. Additionally, in a prosecution for sexual assault, penetration may be proved by circumstantial evidence. *Nilsson v. State*, 477 S.W.2d 592, 595 (Tex.Crim.App. 1972). Similarly, in a prosecution for sexual assault by contact, contact may be proved by circumstantial evidence. S*ee Jimenez v. State*, 953 S.W.2d 293, 297 (Tex.App.—Austin 1997, *pet. ref'd*). Texas courts have also long recognized that children often lack the technical knowledge to accurately describe certain parts of their bodies. *See Clark v. State*, 558 S.W.2d 887 (Tex.Crim.App. 1977). As a result, when examining the testimony of a child, appellate courts are ever mindful of a child's lack of technical knowledge in accurately describing the parts of the body. *O'Hara v. State*, 837 S.W.2d 139, 142 (Tex.App.—Austin 1992, *pet. ref'd*).

In the instant case, A.M. testified about several acts of sexual abuse committed by Appellant on two separate occasions and at two separate locations.

A.M. described how, when the first occasion of sexual abuse occurred at the trailer on Dollar Drive, she and her little sister were lying on the bed and Appellant squeezed in between them. (RR Vol. IV at 114). A.M. testified that she then felt Appellant rubbing her leg and up to her private part with his hand. She also explained that his hand was inside of her clothes. (*Id*. 114). A.M. described how Appellant had then touched the outside of her private part. Her testimony also

41

indicated that, as he pulled her closer to him, Appellant was trying to put his finger into her butt. (*Id.* at 115). A.M. also testified that Appellant had tried to put his "thing" in her butt at one point. (*Id.* at 135). Finally, A.M. described how Appellant had grabbed her hand and tried to pull it towards his "private part." (*Id.* at 119).

During her testimony, A.M. also described a second instance of sexual abuse which occurred after she went to live with her mother at the Solms Apartment. She explained that her mother had gone to the game room in Austin with her grandfather and that she was sleeping on a couch in the living room. (RR Vol. IV at 117, 179). A.M. testified that she felt Appellant come sit down on the couch beside her and start feeling up her leg again. She described how, on this occasion, Appellant had again touched her on her private part (the part she used to go to the restroom) with his hand. (RR Vol. IV at 117). A.M. also expressly testified that Appellant went inside of her shorts and underwear and put his finger inside of her "private part." (*Id.* at 118).

As Appellant seems to recognize in his brief, A.M.'s testimony alone would be legally sufficient to sustain his conviction in the instant case. However, the jury was not left to decide the instant case based only on A.M.'s testimony. As the prosecutor was attempting to explain in his closing argument, the jury also got to

42

hear Appellant's side of the story through a four-hour interview with Detective Schroeder.

The video of the interview shows Appellant confirming many of the details found in A.M.'s testimony. He places himself alone with the children on the two occasions when the acts of sexual abuse were committed against A.M. He also admitted to being in the bed with A.M. at the trailer on Dollar Drive and on the couch where she was sleeping at the Solms Apartment exactly as she described. (State's Exhibit 2, Disc 2 at 16:01:45 &16:28:35). Furthermore, Appellant described how that he had rubbed A.M.'s belly and legs and he admitted that his hand had probably slipped and "accidentally" touched A.M.'s private. (Id. at 16:22:30, 16:22:50, 16:26:24, 16:29:05, 16:31:20, &16:33:03). By the end of the interview, Appellant had apologized to Detective Schroeder for lying to him. (*Id.* at 17:01:35). He also indicated that he would not mind if he had to take classes or got probation. (*Id.* at 17:01:45). Finally, Appellant admitted that he knew it was a mistake to touch A.M.'s vagina. (*Id.* at 17:05:25).

From the evidence presented in the instant case, including A.M.'s testimony and Appellant's own admissions, it is clear that the State had an extremely strong case against Appellant. Furthermore, it is equally clear that Appellant was not convicted for exercising his right to remain silent or any argument concerning his exercise of such right. To the contrary, Appellant was convicted because he did

not remain silent and, after lying to Detective Schroeder for several hours, eventually admitted to committing the very acts of sexual abuse described by A.M. For this reason, this factor should also be heavily weighted in favor of the trial court's denial of Appellant's motion for a mistrial.

## CONCLUSION

As set out above, when the facts and circumstances of the instant case are properly analyzed utilizing the three factors mandated by the Court of Criminal Appeals, it is evident that each of the three factors weigh in favor of the trial court's denial of Appellant's motion for mistrial. Thus, it is clear that the trial court did not abuse its discretion in denying Appellant's motion for mistrial. For these reasons, based on the facts and authorities cited above, Appellant's second point of error is without merit and should be denied.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, the State respectfully requests that this Court deny Appellant's two points of error and affirm Appellant's criminal conviction for Continuous Sexual Abuse of a Young Child as charged in the indictment.

Respectfully submitted,

**/s/ Sammy M. McCrary**
Sammy M. McCrary
Chief Felony Prosecutor
SBN: 90001990

44

150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130
(830) 221-1300
Fax: (830) 608-2008

ATTORNEY FOR STATE

## CERTIFICATE OF SERVICE

I, Sammy M. McCrary, attorney for the State of Texas, Appellee, hereby certify that a true and correct copy of this brief has been delivered to Gregory Lopez's attorney of record:

David K. Sergi
david@sergilaw.com
David K. Sergi & Associates, P.C.
P.O. Box 887
San Marcos, TX 78666
Phone: 1-512-392-5010
Fax: 1-512-392-5042
Attorney for Appellant on Appeal

By electronically sending it to the above-listed email address through efile.txcourts.gov, this 10th day of April, 2015.

**/s/ Sammy M. McCrary**
Sammy M. McCrary

# CERTIFICATE OF COMPLIANCE

I, Sammy M. McCrary, hereby certify that this document was prepared in MS Word and it does not exceed the allowable length for an appellate brief pursuant to Tex. R. App. Pro. 9.4, as amended and adopted on November 30, 2012, by Order of the Texas Court of Criminal Appeals. The approximate total of words in this document, as calculated by the word processing software, is 11,528 words.

**/s/ Sammy M. McCrary**
Sammy M. McCrary